IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| EZRA SHIMSHI; PERSONS SIMILARLY SITUATED, who may join as parties, :<br><br>Plaintiff,<br><br>v.<br><br>CATHY COX, SECRETARY OF STATE OF GEORGIA, in her official capacity; REPRESENTATIVES OF THE GEORGIA HOUSE OF REPRESENTATIVES, in their official capacity; SENATORS OF THE GEORGIA SENTATE, in their official capacity; THE GOVERNOR OF THE STATE OF GEORGIA, in his official capacity; MEMBERS OF THE STATE ELECTION BOARD, in their official capacity,<br><br>Defendants. | CIVIL ACTION FILE NO.<br>1:06-CV-2371 |

**BRIEF IN SUPPORT OF MOTION TO DISMISS**
**ON BEHALF OF THE DEFENDANTS**

In his lawsuit, Plaintiff seeks to declare unconstitutional a fundamental feature of American democracy. Plaintiff argues that all voters should have the right to vote for an unlimited number of candidates for each particular office on the ballot. Plaintiff's pleading is almost completely devoid of fact and consists almost

entirely of Plaintiff's abstract hypotheticals and musings.  Plaintiff does not allege that voters are prevented from voting for the candidates of their choice, or that certain classes of voters are treated differently than others, but instead speculates that some voters may refrain from voting because they perceive that their candidate of choice has very little chance of winning the election.  Plaintiff proclaims that he and other voters have been prevented from voting in free and fair elections solely because he is not entitled to vote for more than one candidate per office, but fails to specify exactly why the current system is unfair; fails to specify how his proposed solution would correct the alleged injustice; and fails to demonstrate that his proposed solution would even be feasible.  In short, Plaintiff is attempting to use the court system for social engineering and experimentation that is solely the realm of the legislature.

Thus, Plaintiff's Complaint is patently frivolous and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because it is clear on its face that he can prove no facts that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); accord *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993); *McKusick v. City of Melbourne*, 96 F.3d 478 (11th Cir. 1996).

## A.     <u>Plaintiff's Complaint Should Be Dismissed Because He Lacks Standing to Bring Suit.</u>

Standing is essential to the "case or controversy" requirement of Article III of the U.S. Constitution. *See e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490 (1975). In order to have standing, a litigant first must have suffered an injury in fact. *U.S. v. Hayes*, 515 U.S. 737, 742 (1995). An injury in fact is an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* Second, the litigant must demonstrate a causal connection between the injury and the conduct in question. *Id.* Third, the litigant must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* Finally, the U.S. Supreme Court has made clear that litigants who merely have generalized grievances against alleged illegal government conduct do not have standing. *Id.*

Based on this authority, Plaintiff does not have standing to bring this suit even under the most expansive interpretation of the meager facts presented in his Complaint. Plaintiff has not alleged a discrete and palpable injury, but instead seeks to restructure the voting system statewide, making nebulous claims that the current system violates his constitutional rights. He does not specify whether he has been injured by the current voting system and does not name other individuals

who have been injured by Georgia's current system of voting.  Nor does he identify any particular election result that he believes to be faulty, providing the Court with very little information with which to even analyze his claim. Additionally, Plaintiff has not identified the particular statute or actions taken by the Defendants to cause the alleged violation, rendering any analysis of whether a causal connection exists to the alleged injury impossible.

Finally, Plaintiff has failed to present facts to show that his requested relief would address the concerns he has raised, making several faulty assumptions. Plaintiff merely speculates, without providing any facts in support, that some voters may vote if the voting system were changed and that the outcomes of American elections may be different if the system were changed.  Plaintiff assumes that many voters base their decision to vote on their own perceptions of their preferred candidate's chances of winning.  Plaintiff further assumes that the current voting system prevents candidates from winning without a majority of support from the American people.

Since it is apparent from the face of the Complaint that Plaintiff has no standing to bring this suit, his action should be dismissed.

  **B.** **<u>Georgia's Current Voting System is Constitutional</u>**

Even if Plaintiff did have standing to bring suit against Defendants, he can not demonstrate that Georgia's current voting system violates the Fourteenth,

4

Fifteenth and Nineteenth Amendments to the U.S. Constitution as he claims. Plaintiff's allegations regarding the current voting system are properly analyzed using a rational basis review. His claims must fail under a rational basis review. In fact, his arguments would not be meritorious even if a strict scrutiny analysis were employed in analyzing Georgia's voting system.

> **1.    The Georgia Voting System is Subject to a Rational Basis Review.**

Though in illustrating his arguments, Plaintiff uses the example of an "American Moslem female of Chinese origin, his arguments could apply to voters who are not members of protected classes. It is not clear whether Plaintiff seeks to limit his arguments to voters who are members of protected classes. Further, Plaintiff has not identified a fundamental right that has been infringed by Georgia's voting system, since voters can not assert a fundamental right to being guaranteed that the candidate of their choice, or to being assured that their leaders are elected with a majority rather than a plurality of the vote. *See Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000), *cert. denied,* 532 U.S. 978 (2001) (*citing Bannun, Inc. v. City of Fort Lauderdale*, 157 F.3d 819, 822 (11th Cir. 1998)). Thus, since Plaintiff has not alleged that he is a member of a protected class, has not even identified a protected class that is disparately affected by the current voting system in Georgia, and cannot claim infringement of a fundamental right,

5

this Court must apply a rational basis test in analyzing equal protection claims relating to the current voting system. *Id.*

In analyzing equal protection claims, the Court must determine whether the challenged law was taken pursuant to a legitimate government purpose. *Joel*, 232 F.3d at 1358. Next, the Court must determine whether a rational basis exists for the legislation. *Id.* The legislation survives rational basis scrutiny as long as the reasons for the legislation "may have been considered true, and the relationship between the classification and the goal is not so attenuated as to render the distinction arbitrary or irrational." *Joel* at 1358, *quoting Haves v. City of Miami*, 52 F.3d 918, 921-22 (11th Cir. 1995).

Further, it should be noted that in applying the rational basis analysis, a statute is "entitled to a 'strong presumption of validity' [citations omitted] so much so that our review of enactments under the rational basis standard must be 'a paradigm of judicial restraint.'" *Joel* at 1358, *citing F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993). The federal Constitution allows States the right to prescribe the manner by which State elections are conducted. *South v. Peters*, 89 F. Supp. 672, 680 (N.D. Ga. 1950)(affirmed in *South v. Peters*, 339 U.S. 276 (1950) (regarding the Neill Primary Act, which prescribed the vote in primary elections to be by county units rather than by majority or plurality of the entire votes cast in the primary).

Georgia's current system of restricting voters to only one vote per candidate is without question a rational means of conducting elections and has been used in American election since this country's inception.  While voters have a fundamental right to vote, they do not have a fundamental right to be guaranteed that their preferred candidate will be victorious.  Not only can Plaintiff not challenge the rationality behind the rule, but it is unclear whether Plaintiff's proposed solution to the problem is feasible or even legal.

### 2. Plaintiff's Claims Would Fail Even if Georgia's Voting System Were Subjected to a Strict Scrutiny Analysis.

Plaintiff's allegations would not be meritorious even under a strict scrutiny analysis because he has failed to show how Georgia's voting system denies any individual from an "equal opportunity to participate in the political process and elect candidates of its choice".  *Johnson v. DeSoto*, 204 F.3d 1335, 1344 (11th Cir. 2000).  In order to be successful on his claims, Plaintiff must demonstrate *not only* show the lack of equal opportunity to participate in the political process, but *must also* demonstrate that this inequality of opportunity results from the voting scheme *and* that a racially discriminatory purpose underlies the scheme. *Id*. at 1345 (citing *Lucas v. Townsend,* 967 F.2d 549, 551 (11th Cir. 1992*) (emphasis added*).  To successfully prove a constitutionally violative election scheme, plaintiffs must show that "the very *purpose* of the challenged law, ordinance, or practice that

7

produces the adverse effect was a discriminatory one." *Lucas v. Townsend,* 783 F. Supp. 605, 619 (M.D. Ga. 1992) (*emphasis added*).  A law that affects some groups in a way that is different than others is not necessarily a constitutional violation.  *See, e.g., Tigner v. Texas,* 310 U.S. 141, 147 (1940).  A facially neutral law "is unconstitutional under the Equal Protection Clause only if [a discriminatory] impact can be *traced* to a discriminatory purpose." *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 260 (1979) (*emphasis added*).

Georgia's current system of limiting each voter to one vote per office does not discriminate against any voter, including Plaintiff.  Under Georgia's system, all voters are treated equally and all votes are equally weighted.  No individual is denied an "equal opportunity to participate in the political process and elect candidates of its choice." *Johnson*, 204 F. at 1344.  While Plaintiff specifically uses the example of an American Moslem female of Chinese origin, Plaintiff does not allege that this individual is treated any differently from any other groups of voters or that the system affects certain groups of voters more severely than other groups.  Plaintiff implicitly acknowledges that voters have a right to vote for any candidate that they choose.  However, voters do not have a fundamental right to be assured that the candidate of their choice will have a substantial chance of winning an election, or that certain candidates with socially repugnant views will not be elected, as Plaintiff fears.

Even if being limited to one vote per office could be seen as substantially infringing on a fundamental right or targeting a protected class, Georgia's voting system would still be constitutional. Laws that place substantial burdens on the right to vote are constitutional as long as they serve a compelling state interest and are narrowly tailored to further those interests. *Duke v. Massey*, 87 F.3d 1226, 1234 (11th Cir. 1996); *Storer v. Brown,* 415 U.S. 724, 730 (1974). Georgia has a compelling interest in "structuring and regulating elections in order to facilitate order, honesty and fairness." *Id.* Georgia's election code is comprehensive and complex, having evolved over time to achieve this purpose. *Storer,* 415 U.S. at 730. Given the circumstances behind the evolution of each state's voting system, the U.S. Supreme Court has noted that it is "very unlikely that all or even a large portion of the state election laws" would fail to pass constitutional muster. *Id.* Thus, since limiting each vote to one vote is a key feature of voting systems nationwide and worldwide, Plaintiff's allegations are trivial to the point of absurdity.

**C.     The Georgia Senate and Georgia House of Representatives are not Entities Capable of Being Sued under Georgia Law.**

The Georgia House of Representatives and Georgia Senate should be dismissed as defendants as they are not legal entities capable of being sued. Capacity to sue or be sued in federal court is determined by state law, except in limited situations which do not apply in the instant case. Federal Rule of Civil

Procedure 17(b) provides that an individual's capacity to defend a suit is to be determined by the state law of the individual's domicile and that an organization's capacity to defend a suit is to be determined by the laws of the state in which it was organized. O.C.G.A. § 9-11-17(b) reiterates this proposition. Whether the two houses of the Georgia General Assembly are capable of being sued, therefore, is to be determined by the laws of the State of Georgia.

The Georgia Constitution establishes that "[t]he legislative power of the state shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives." Ga. Const. 1983, Art. III, Sec. I, Para. I. The state Constitution gives the General Assembly "the power to make all laws not inconsistent with this Constitution, and not repugnant to the Constitution of the United States, which it shall deem necessary and proper for the welfare of the state." Ga. Const. 1983, Art. III, Sec. VI, Para. I. More specific powers are enumerated in Article III, Section VI, Paragraph 2. Although they are extensive, these powers deal only with lawmaking; they do not include the power to bring or defend lawsuits in either state or federal court.

In addition, acting as a litigant would be wholly impractical for the House of Representatives and Senate, which organize each odd-numbered year and are "a different General Assembly for each two-year period." Ga. Const. 1983, Art. III, Sec. IV, Para. I. An organization that, in effect, becomes a different entity every

two years cannot well serve as party to litigation. Any order entered in regard to the current General Assembly would not be binding on the new General Assembly that will convene in January of 1999. The same would be true again in January of 2001.

Finally, the House of Representatives and Senate are not cohesive bodies with consistent institutional interests or identities. The House consists of a minimum of 180 individual Representatives elected from both major political parties. The Senate consists of a minimum of 56 individual Senators also elected from both major political parties. Ga. Const. 1983, Art. III, Sec. II, Para. I. These individual members of each legislative body have diverse interests and agendas and, therefore, may not be able to present a common defense or agree on common legal tactics in the face of litigation.

It is well established as a general premise that courts should not substitute their social and economic beliefs for the judgment of the legislative bodies who are elected to pass laws. *Kahn v. Shevin*, 416 U.S. 351 (1974). It is not the responsibility of any court, even the United States Supreme Court, to legislate social policy. *See Evans v. Abney*, 396 U.S. 435 (1970). Courts may construe the laws, and strike down laws that conflict with the Constitution, but they may not substitute their judgment for that of the state legislature or impose the legislative

judgments of other states on a sister state. *Libertarian Party of Florida v. State of Florida*, 710 F.2d 790 (11th Cir. 1983).

That premise is doubly true when the request is that a federal court intrude into the sovereignty of the State, substituting its judgment for that of the elected representatives of the people of Georgia. The principle of federalism is done violence if this Court accedes to the Plaintiffs' demand. The Eleventh Circuit has posited that federalism concerns are based on democratic accountability grounds and that "federal judges — who have no constituency — have a duty to respect legitimate policy choices made by those who do." *Teper v. Miller*, 82 F.3d 989, 998, n 11 (11th Cir. 1996).

Federalism concerns in the instant case are very strong and caution against intervention by the federal judiciary. The Supreme Court has recognized that "States retain the power to regulate their own elections. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Sugarman v. Dougall,* 413 U.S. 634, 647 (1973); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986). The Constitution contains no command or prohibition that would require Georgia to allow voters to vote for more than one candidate per office. Many areas of elections are completely left up to the states. *See Tashjian*, 479 U.S. at 223 (recognizing that it was not the Court's role "to decide whether the state legislature was acting wisely in enacting the closed primary system . . .."); *S.J. Groves v. Fulton County*, 920

F.2d 752, 763 (11th Cir. 1989)(federalism prohibits preemption of state laws by unconstitutional acts of Congress); *Williams v. Kemp*, 846 F.2d 1276, 1286 (11th Cir. 1988) (state legislative determination that death penalty had social utility was entitled to deference because of federalism); *Tallahassee Branch of NAACP v. Leon County, Florida*, 827 F.2d 1436 (11th Cir. 1987) (state legislature's reapportionment plan entitled to great deference because of concepts of federalism).

For the above-described reasons, therefore, the Georgia House of Representatives and the Georgia Senate are not legal entities capable of being sued. As a result, both should be dismissed as defendants in the instant lawsuit.

## CONCLUSION

Plaintiff's Complaint is patently frivolous and his proposed reforms are unworkable. Even if Plaintiff's ideas were feasible, his concerns are outside the purview of the judicial system and should be left to the fact-finding and policy determinations that are the *forté* of legislatures. S*ee Baker v. Carr*, 369 U.S. 186, 217 (1962). Further, Plaintiff lacks standing to bring suit and his complaints regarding the current voting system in Georgia are nearly incomprehensible. Based on the foregoing, Defendant urges this Court to dismiss the action because it fails to state a claim on which relief can be granted.

## Certification of Font and Point Size

Pursuant to Local Rule 7.1(D), by signature below, counsel certify that the foregoing pleading was prepared in Times New Roman 14-point font in compliance with Local Rule 5.1B.

This 5th day of January, 2007.

                                        Respectfully submitted,

                                        THURBERT BAKER        033887
                                        Attorney General

                                        DENNIS DUNN            234098
                                        Deputy Attorney General

                                        STEFAN RITTER           606950
                                        Senior Assistant Attorney General


                                        s/ Calandra Almond
                                        Attorney Bar Number:  013605
                                        Attorney for Defendants
                                        Assistant Attorney General
                                        Department of Law
                                        40 Capitol Square, S.W.
                                        Atlanta, Georgia 30334-1300
                                        Telephone: (404) 463-1064
                                        E-mail: calmond@law.ga.gov

## **CERTIFICATE OF SERVICE**

I do hereby certify that on January 5, 2007, I electronically filed the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS,** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing. I also hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

>Ezra Shimshi
>P.O. Box 421011
>Atlanta, GA  30342

>s/ Calandra Almond_____
>CALANDRA ALMOND          013605
>Attorney for Defendants

Department of Law
40 Capitol Square, SW
Atlanta, GA 30334
Phone:  (404) 463-1064
FAX:    (404) 657-9932
calmond@law.ga.gov